UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-24244-BLOOM/DAMIAN

NATALIE ELIODOR

    Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security

    Defendant.
_____/

**REPORT & RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 17 & 20]**

THIS CAUSE is before the Court on the parties' Cross-Motions for Summary Judgment, filed May 9, 2022 [ECF No. 17], and July 8, 2022 [ECF No. 20]. Plaintiff, Natalie Eliodor ("Plaintiff" or "Ms. Eliodor"), seeks reversal and remand of the Decision of the Administrative Law Judge ("ALJ") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), and Defendant, Kilolo Kijakazi (the "Commissioner"), requests the Court affirm the ALJ's Decision. This matter was referred to the undersigned for a Report and Recommendation by the Honorable Marcia G. Cooke, United States District Judge.[1] [ECF Nos. 6, 9]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the parties' briefing [ECF Nos. 17, 20, 21], the administrative record [ECF No. 15], and all relevant authorities and is otherwise fully informed in the premises. For the reasons that follow, the undersigned recommends the Court

---

[1] On January 30, 2023, the case was reassigned to the Honorable Beth Bloom for all further proceedings. [ECF No. 22].

deny Plaintiff's Motion for Summary Judgment [ECF No. 17], grant Defendant's Motion for Summary Judgment [ECF No. 20], and affirm the Decision of the ALJ.

## I.   RELEVANT FACTUAL BACKGROUND

### A.   *Ms. Eliodor's Claims For Benefits*

Ms. Eliodor alleges disability beginning on June 13, 2019, and she was 38 years old on her alleged disability onset date, such that she fell within the definition of a "younger individual" (age 18-49) (R. 25).[2] Ms. Eliodor has a limited education and past relevant work as a manicurist. (R. 25).

### B.   *Relevant Medical Evidence And Expert Opinions Regarding Ms. Eliodor*

The issues raised by Ms. Eliodor in her Motion for Summary Judgment regarding the medical evidence in the record are limited in scope to arguments based on the ALJ's consideration of her mental impairments. Accordingly, below is a non-exhaustive summary of the relevant medical evidence in the record regarding Ms. Eliodor's mental impairments.

On December 1, 2019, Ms. Eliodor was hospitalized due to a stroke and brain aneurysm.[3] (R. 644). Shortly thereafter, Ms. Eliodor was admitted for rehabilitation and physical therapy. (R. 644). On December 9, 2019, Cheri Gay Surloff, PsyD, noted that Ms. Eliodor had been referred to psychiatry because she stated: "I feel like I wish I were dead. I can't deal with all of this" (R. 664). Dr. Surloff reported that Ms. Eliodor "is doing much

---

[2] All references to "R." refer to the transcript of the Social Security Administration filed on March 7, 2022. [ECF No. 15]. The page numbers listed in this document refer to the bold numbers found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the Court's electronic docketing system or any other page numbers.

[3] This followed hospitalization for chest pain in June 2019 and open-heart surgery in August 2019, followed by a fever and infection resulting in rehospitalization. (R. 333, 337, 542)

2

better" and "would do well by going to a psychiatrist or a psychologist for some therapy to adjust to having had a stroke at such a young age." (R. 664).

After Ms. Eliodor was informed on December 17, 2019, that her insurance would not continue to cover her rehabilitation, she reported increased suicidal ideations. (R. 644-45). The next day, Ernesto Manuel Grenier, M.D, conducted a tele-psychiatric evaluation of Ms. Eliodor and deemed her not to be a threat to herself and, therefore, cleared Ms. Eliodor for discharge from rehabilitation. (R. 645). Dr. Grenier noted that Ms. Eliodor reported increased sadness, depressed mood, low motivation, and helplessness but that she denied suicidal or homicidal ideations. (R. 671). Dr. Grenier reported that Ms. Eliodor displayed dysthymic mood, restricted affect, limited insight and judgment, and thought content marked by helplessness. (R. 672).

On January 27, 2020, Sonal Mehta, M.D., a neurologist, saw Ms. Eliodor at North Shore Medical Center for a follow-up exam and reported that Ms. Eliodor was alert and oriented with clear speech and good comprehension. (R. 1003-04). Ms. Eliodor continued her follow-up exam the next day, and Nadejda Dobrydnik, APRN, reported that Ms. Eliodor self-reported no feelings of hopelessness or depression in the previous two weeks. (R. 1059). Ms. Dobrydnik also reported that Ms. Eliodor stated that depression symptoms had not caused her any difficulties with activities of daily life in the past two weeks. (R. 1059).

On March 12, 2020, Vitalie Crudu, M.D., Ms. Eliodor's cardiologist, reported seeing Ms. Eliodor for a follow-up exam and assessed Ms. Eliodor with normal affect and good judgment. (R. 941). Dr. Crudu also reported that Ms. Eliodor reported no depression, anxiety, panic attacks, thoughts of suicide, or hallucinations. (R. 941). After another follow-up visit,

on August 6, 2020, Dr. Crudu reported similar findings and noted that Ms. Eliodor continued to report no depression, anxiety, panic attacks, suicidal thoughts, or hallucinations. (R. 937).

## II. PROCEDURAL BACKGROUND

On June 17, 2019, Ms. Eliodor applied for DIB and SSI benefits. (R. 15, 204). Her applications were initially denied on November 22, 2019, and again, upon reconsideration, on April 7, 2020. (R. 15). Ms. Eliodor then requested a hearing, which was held before an ALJ on November 12, 2020. (R. 31-60). The ALJ issued the Decision on January 21, 2021, finding that Ms. Eliodor has not been under a disability under Sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act (the "Act") since June 13, 2019, the alleged disability onset date, through the date of the Decision. (R. 15-26). Ms. Eliodor then requested review of the ALJ's Decision, and on September 28, 2021, the Appeals Council denied her request for review, rendering the ALJ's Decision the Commissioner's "final" decision. (R. 1-5). *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Having exhausted her administrative remedies, on December 2, 2021, Ms. Eliodor filed the instant action seeking review of the ALJ's Decision. [ECF No. 1]. *See* 42 U.S.C. § 405(g). Thereafter, Ms. Eliodor filed her Motion for Summary Judgment on May 9, 2022. [ECF No. 17]. The Commissioner filed her Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment on July 8, 2021. [ECF Nos. 20-21][4]. Ms. Eliodor did not file a reply.

Both parties' motions are ripe for adjudication.

---

[4] ECF Numbers 20 and 21 are identical Motions.

### III.    THE SEQUENTIAL EVALUATION PROCESS

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1328c(a)(1)-(3). A claimant is disabled if she is unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C §§ 423(d)(1)(A), 1382c(a)(3)(A); *Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 317 (11th Cir. 2021). A plaintiff bears the burden of proving she is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1512(a), (c), 416.912(a), (c).

The ALJ must determine whether a claimant is disabled under Sections 216(i), 223(d), or 1614(a)(3)(A) of the Act by applying the five-step sequential evaluation process set forth in the Act. (R. 29). *See* 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

At step one of this process, the ALJ must determine whether the claimant is unable to engage in substantial gainful activity ("SGA"). *Id*. SGA is defined as work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. Generally, if a claimant's labor earnings are above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA. 20 C.F.R. §§ 404.1574-75, 416.974-5. If a claimant can engage in SGA, the ALJ will find that she is not disabled for that period of time. 20 C.F.R. §§ 404.1571, 416.971.

At step two, the ALJ must determine whether the claimant has a severe medically determinable mental or physical impairment ("MDI") or a combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is severe if it significantly limits an individual's ability to perform basic work activities. *Id*. If the

claimant does not have an MDI or combination of impairments that is severe, she is not considered disabled. *Id*.

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals the criteria of an impairment listed in Appendix 1 to Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d), 404.1525-26; *see also* §§ 416.920(d), 416.925-26. If so, the claimant is disabled. *Id*. If not, the analysis proceeds to the next step. *Id*. Before considering step four, however, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ must make this determination while stating "with particularity the weight given to different medical opinions and the reasons therefor." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).

At step four, the ALJ must determine whether the claimant can perform her past relevant work, in light of her RFC. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed (either in the manner claimant actually performed it or as it is generally performed in the national economy) within 15 years prior to the date claimant's disability must be established. 20 C.F.R. §§ 404.1560, 416.960. If the claimant has the RFC to do her past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is unable to do any of her past relevant work, the analysis proceeds to the final step.

At the fifth and final step, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. §§

404.1520(g), 416.920(g). If the claimant can do other work, she is not disabled. *Id*. If she is unable to do other work, she is disabled. *Id*. At step five, the burden temporarily shifts to the Commissioner to show the existence of other jobs in the national economy that exist in significant numbers that the claimant can perform, given her impairments. 20 C.F.R. §§ 404.1512, 404.1560(c), 416.912, and 416.960(c). The ALJ makes this determination by considering both the Dictionary of Occupational Titles ("DOT") and testimony from an impartial Vocational Expert ("VE"). *See Buckwalter*, 5 F.4th at 1321.

### IV.     THE ALJ's DECISION

Applying the foregoing sequential evaluation to Ms. Eliodor's claim for benefits, the ALJ found at step one of the sequential evaluation process that Ms. Eliodor has not engaged in substantial gainful activity since June 13, 2019, the alleged onset date, and, at step two, found that Ms. Eliodor had severe impairments of "reconstructive surgery of weight bearing joint – left femur; recurrent arrhythmias; hypertension; status post cerebrovascular accident; [and] internal carotid artery aneurysm." (R. 18) (alteration added).

The ALJ also found that Ms. Eliodor's mental impairment of depression does not cause more than minimal limitation in Ms. Eliodor's ability to perform basic mental work activities and, therefore, is non-severe. (R. 18). In making this finding, the ALJ considered whether the "paragraph B" criteria were satisfied. (R. 18-19). To satisfy the paragraph B criteria, a claimant's mental impairments must result in at least one extreme or two marked limitations in the following broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves. 40 C.F.R. Part 404, Subpart P, Appendix 1, Rule 12.00. Here, the ALJ found that Ms. Eliodor had mild limitations in all four broad areas of

functioning listed above. (R. 18-19). The ALJ concluded that because Ms. Eliodor's mental impairment causes no more than mild limitations in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in Ms. Eliodor's ability to do basic work activities, her mental impairment is non-severe. (R. 19); *see also* 20 CFR §§ 404.1520a(d)(1), 416.920(a)(d)(1).

At step three of the sequential evaluation process, the ALJ determined that the severity of Ms. Eliodor's impairments does not meet or medically equal the severity of one of the listed impairments. (R. 19). Before proceeding to step four, the ALJ assessed Ms. Eliodor's RFC and found that Ms. Eliodor can perform sedentary work with some limitations:

> After careful consideration of the entire record, I find that the claimant has the residual function capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She can occasionally stoop, crouch, or balance. The claimant can never kneel or crawl. She is right hand dominant and can frequently handle, finger, or reach with the right upper extremity. She must have no exposure to hazardous machinery/mechanical parts, unprotected heights, or vibration. The claimant must have no concentrated exposure to fumes, odors, dusts, or irritants. She can maintain concertation for at least two hours at a time, and will remain on task at least 90% of the workday.

(R. 19).

At step four of the sequential evaluation process, the ALJ found that Ms. Eliodor is unable to perform any of her past relevant work. (R. 25). In concluding that Ms. Eliodor could not perform her past relevant work, the ALJ relied on testimony from the VE that a hypothetical individual with Ms. Eliodor's age, education, work experience, and RFC could not perform any of her past relevant work. (R. 25, 55).

At step five, the ALJ, having found that Ms. Eliodor's ability to do sedentary work has been impeded by additional limitations, asked the VE whether jobs exist in significant numbers in the national economy that a hypothetical person with Ms. Eliodor's RFC could

perform. (R. 25-26, 55). The VE testified that a person with Ms. Eliodor's RFC could work as a call out operator, charge account clerk, and food and beverage order clerk. (R. 26, 55-56). The VE further testified that in the national economy, there are 115,200 call out operator jobs, 29,900 charge account clerk jobs, and 48,300 food and beverage clerk jobs. (R. 26, 55-56). On cross-examination, counsel for Ms. Eliodor asked the VE how she obtained the number of jobs in the national economy for the three jobs listed above:

> Q   Can you describe how you obtain the numbers of jobs in the national economy in response to number one? Ms. Leggett, are you still there?
> A   You didn't lose me, I accidentally pressed the mute button, sorry. I use the *Bureau of Labor Statistics* and I also use ONET for my national numbers.
> Q   Do you know how ONET obtains those numbers?
> A   Yes, they use *OES* numbers and essentially what I do is I look at the numbers that are provided and I look at the particular work environment to be able to nail things further down to the representative of the particular job within the field that I'm identifying.
> Q   Do, you basically do division based on the numbers of jobs that are in that grouping in the *SOC*?
> A   Correct. It'll [sic] usually even find a percentage within a particular work environment of the overall numbers and I use that percentage.

(R. 57-58). Counsel for Ms. Eliodor did not ask any further questions regarding the number of jobs in the national economy for the jobs listed by the VE that an individual with Ms. Eliodor's RFC could perform.

Based on the VE's testimony, the ALJ concluded that Ms. Eliodor is capable of making a successful adjustment to other work that exists in significant numbers in the national economy and, therefore, found that she is not disabled. (R. 26).

## V.  APPLICABLE STANDARDS FOR REVIEW OF THE ALJ'S DECISION[5]

The Court's review of the ALJ's Decision is limited to determining whether it is supported by substantial evidence and whether the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). Substantial evidence is more than a scintilla but less than a preponderance. *Id*. (citations omitted); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Buckwalter*, 5 F.4th at 1320. A court must defer to the ALJ's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it. *Id*. A court may not redecide facts, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id*. Although factual findings enjoy such deference, the ALJ's legal analysis and conclusions are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## VI.  ISSUES RAISED IN THE PARTIES' MOTIONS

In her Motion for Summary Judgment, Ms. Eliodor argues that the VE's testimony does not constitute "substantial evidence" upon which the ALJ could properly rely because the VE "substantially overstated" the number of jobs in the national economy for all three jobs the VE testified Ms. Eliodor could perform. *See* Mot. at 5-15. Ms. Eliodor also argues that the ALJ's RFC finding is not supported by the substantial evidence of record. *See id*. at 15-19. Specifically, Ms. Eliodor argues that the ALJ's RFC assessment failed to incorporate

---

[5] The standard of review in SSI cases is the same as the standard for DIB cases. 42 U.S.C. § 1383(c)(3). Consequently, the case law addressing DIB cases is generally applicable to SSI cases.

limitations corresponding to Ms. Eliodor's mental impairments, which the ALJ found were not severe in step two of the sequential evaluation. *See id*. Ms. Eliodor argues that these issues warrant reversal of the ALJ's Decision or, alternatively, remand with instructions for the ALJ to obtain VE testimony that constitutes substantial evidence, properly assess the evidence of record, fully develop the record, and issue an RFC finding that is supported by substantial evidence regarding jobs incidence data. *Id*. at 20.

The Commissioner responds, in her Motion for Summary Judgment and Response to Plaintiff's Motion, that the ALJ's reliance on the VE's testimony is supported by substantial evidence and that the Court should not consider new objections to the VE's testimony that were not raised at the administrative hearing nor new evidence that is not present in the record. Resp. at 5-7. The Commissioner also argues that contrary to Ms. Eliodor's assertions, substantial evidence does support the ALJ's RFC finding. *Id*. at 7-9.

## VII.   DISCUSSION

### A.   *Whether the VE's Testimony Constitutes Substantial Evidence.*

At the hearing, the VE testified that a hypothetical individual with Ms. Eliodor's age, education, work experience, and RFC could not perform her past relevant work, but could perform the jobs of call out operator, charge account clerk, and food and beverage order clerk. (R. 54-55). The VE stated that there were approximately 115,200 full-time call out operator jobs, 29,900 full-time charge account clerk jobs, and 48,300 full-time food and beverage clerk jobs in the national economy, estimates that the ALJ ultimately adopted in her Decision. (R. 26, 55).

Counsel for Ms. Eliodor did not object to the VE's job number estimates during the hearing. However, Ms. Eliodor now claims, for the first time on appeal, that the job incidence

data provided by the VE for all three jobs is substantially overstated. Mot. at 6. In support, Ms. Eliodor provides the Court with labor market data from SkillTran's Job Browser Pro, which shows that there were only 2,704 full-time call operator jobs, 1,048 full-time charge account clerk jobs, and 956 food and beverage clerk jobs in the national economy for the year 2020. *Id*. at 6-7; *see also* ECF No. 17-1 (JBP Job Incidence Data). Ms. Eliodor alleges Job Browser Pro data is frequently relied upon by VE's as a source of estimated job incidence data. *Id*. at 6. Ms. Eliodor also asserts that Bureau of Labor Statistics ("BLS") data shows only 24,600 jobs in existence for the entire Standard Occupational Classification group that call out operator belongs to and which contains three other jobs *Id*. at 10. Ms. Eliodor argues that such a vast disparity in job number estimates between the VE's testimony and the estimates from Job Browser Pro and the BLS indicates that the VE's testimony cannot constitute substantial evidence. *Id*. at 7. In support, Ms. Eliodor relies on two Eleventh Circuit cases: *Goode v. Commissioner of Social Security*, 966 F.3d 1277 (11th Cir. 2020), and *Viverette v. Commissioner of Social Security*, 13 F.4th 1309, 1319 (11th Cir. 2021). Mot. at 11-14.

In *Goode*, the Eleventh Circuit held that when an ALJ relies on a VE's testimony regarding the number of jobs available in the national economy that the claimant could perform, "that testimony cannot be both internally inconsistent and incomplete." 966 F.3d at 1285-86. The Eleventh Circuit also recognized, however, that *Goode* was "not a case in which the claimant failed to challenge or question the [VE's] methodology or job numbers." *Id*. at 1284 n.3. Rather, the record showed that the claimant there made several attempts during her hearing to question the VE about his flawed testimony and credibility, but the ALJ cut the claimant's questioning short by urging her to "move on." *Id*. Similarly, in *Viverette*, the claimant challenged, on cross-examination, the VE's testimony regarding the number of jobs

12

available nationally. 13 F.4th at 1319. Thus, the Eleventh Circuit found that remand was appropriate because there was evidence in the record that the number of positions estimated by the VE may have been overstated and that the ALJ failed to investigate the discrepancy. *Id*.

Ms. Eliodor also cites Social Security Rule ("SSR") 00-4p for the proposition that the ALJ had a duty to resolve the disparity between the VE's job number estimates and those presented by Ms. Eliodor. Mot. at 14-15.

In response, the Commissioner argues that Ms. Eliodor is foreclosed from challenging the VE's testimony regarding the numbers of call out operator, charge account clerk, and food and beverage clerk jobs in the national economy because she did not object to or challenge the VE's testimony on these points during the hearing. Resp. at 7. Therefore, according to the Commissioner, *Goode* is not persuasive. *Id*.

The Commissioner also argues that under SSR 00-4p, the ALJ need only resolve apparent conflicts between the DOT and VE, and the ALJ could not have addressed job numbers from different sources, such as Job Browser Pro, that were not presented as evidence to the ALJ or Appeals Council. *Id*. at 6. The undersigned agrees.

Work exists in the national economy when it exists in significant numbers in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 404.1566(a). The ALJ, relying on a VE's testimony, determines whether a specific number of jobs constitutes a significant number. *See* 20 C.F.R. § 404.1560(c). If a claimant does not present her own employment statistics before the ALJ or object to the VE's testimony, the court is foreclosed from considering the claimant's data presented for the first time on appeal. *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020) (per curiam) (finding

13

the ALJ was entitled to rely on VE's testimony about the number of jobs available in the national economy because the claimant did not object to the VE's testimony, did not question the VE's qualifications, and did not present occupational employment statistics to the ALJ, which also foreclosed the Eleventh Circuit's consideration of the statistics on appeal).

The undersigned finds that the Court is foreclosed from considering the new evidence now offered by Ms. Eliodor because she did not present that evidence before the ALJ and, unlike the claimants in *Viverette* and *Goode*, Ms. Eliodor did not object to the VE's methodology, data, or testimony concerning job numbers during the hearing. Thus, the VE's testimony is the only evidence regarding the number of jobs available in the record, and nothing in the rest of the record conflicts with the VE's job number estimates. *See Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998) (on appeal from an ALJ's decision, courts only consider evidence that was actually presented to the ALJ to determine whether the ALJ's decision is supported by substantial evidence).[6] As such, the VE's testimony "would be the kind of evidence—far more than a mere scintilla—that a reasonable mind might accept as adequate to support a finding about job availability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019) (holding that inquiry into whether VE's testimony is substantial evidence is decided on a case–by–case basis). Therefore, the undersigned finds that the ALJ did not err when she considered the VE's job estimates as substantial evidence because that is the only evidence regarding the number of jobs that was presented to her and is available in the record.

---

[6] The Eleventh Circuit has consistently held that it will not consider data on appeal from an ALJ's decision where the claimant did not object to the VE's testimony during the hearing. *Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 675 (11th Cir. 2019); *Valdez*, 808 F. App'x at 1009; *Bacon*, 861 F. App'x at 320.

The undersigned is also not persuaded by Ms. Eliodor's reliance on SSR 00-4p because SSR 00-4p only requires the ALJ to identify and resolve apparent conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). 2000 WL 1898704 at *1. However, this affirmative duty to resolve conflicts with the VE testimony does not extend to other sources outside the DOT. *See id*; *see also Webster v. Commissioner of Social Security*, 773 F. App'x 553, 556 (11th Cir. 2019) (holding that ALJ's duty to investigate apparent conflicts under SSR 00-4p does not extend to conflicts between the VE's testimony and statistics provided by the BLS that are not part of the SSA's regulatory scheme). Nor does SSR 00-4p require the ALJ to inquire *sua sponte* into the foundation for the VE's testimony concerning the number of relevant jobs in the national economy. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017). Ms. Eliodor does not point to any case, regulation, or statute suggesting that the ALJ must *sua sponte* take administrative notice of economic data when the claimant did not raise an issue with job numbers during the hearing.

Thus, to the extent Ms. Eliodor's Motion for Summary Judgment is based on the VE's alleged overstatement of available job numbers, for the foregoing reasons, the undersigned recommends the Motion be denied.

    **B.**    *Whether The ALJ's RFC Assessment Is Supported By Substantial Evidence.*

Ms. Eliodor also argues that the ALJ's RFC assessment is not supported by the substantial evidence of record because it fails to properly account for all of Ms. Eliodor's limitations arising from all her impairments, including those that are not severe. Mot. at 19. Specifically, Ms. Eliodor avers that the ALJ's RFC assessment fails to properly account for reasonable limitations relating to Ms. Eliodor's non-severe psychological, cognitive, and neurological impairments when considered in combination with Ms. Eliodor's severe

impairments. *Id*. Ms. Eliodor also argues that the ALJ failed to fully develop the record as required by SSR 17-4p and Title 20, Code of Federal Regulations, Sections 404.1512 and 416.912, by not ordering a psychological or neurological consultative exam of Ms. Eliodor. *Id*. at 18-19.

The Commissioner responds that the ALJ's RFC assessment is supported by substantial evidence because it is consistent with the objective mental findings in the record. Resp. at 8-9.

SSR 17-4p and Sections 404.1512 and 416.912 of Title 20 of the Code of Federal Regulations require the ALJ develop a claimant's complete medical history up to at least the 12 months preceding the month in which she applied for benefits. However, these rules and regulations do not require the ALJ to order specific consultative exams. In fact, Sections 404.1512 and 416.912 state that the ALJ will generally not request a consultative examination until the SSA has made every reasonable effort to obtain evidence from a claimant's own medical sources. 20 C.F.R. §§ 404.1512(b)(2) and 416.912(b)(2). Here, the record reflects the SSA obtained and reviewed evidence from Ms. Eliodor's own medical sources, including psychiatric and neurological reports from Dr. Grenier, Dr. Mehta and Dr. Annabelle Maldonado-Medina. *See*, *e.g.* (R. 644-45, 667-69, 1003-05). Therefore, the undersigned is not persuaded by Ms. Eliodor's argument that the ALJ failed to develop the record by not ordering a psychological or neurological consultative exam.

Moreover, review of the ALJ's Decision reflects that the ALJ properly considered all the relevant record evidence regarding Ms. Eliodor's psychological, cognitive, and neurological impairments, including how her non-severe mental impairments combine with her severe impairments. In the Decision, the ALJ found that Ms. Eliodor's depression does

not cause more than minimal limitation in her ability to perform basic work activities and, therefore, is non-severe. (R. 18). In making this finding, the ALJ considered the four broad functional areas known as the paragraph B criteria and determined that Ms. Eliodor has mild limitations in all four broad functional areas:

> The claimant has mild limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. The claimant is oriented to three spheres, and she displays good judgment (Ex. 1F/13,4F/9, 9F/4). Her thought content does not reveal any impairment (Ex. 3F/18, 3F/33, 10F/22). During a consultative examination, the claimant's memory was grossly intact (Ex. 4F/9). The claimant's calculation and cognitive functions, abstraction, and executive functions appeared commensurate with her age, socioeconomic status, and education (Ex. 4F/9). The claimant denies hallucinations (Ex. 6F/30). She also denies current suicidal or homicidal ideations (Ex. 4F/9, 6F/30). Her speech is normal (Ex. 3F/33). The claimant's mood is euthymic and her affect is normal (Ex. 3F/18, 3F/33, 10F/9, 10F/22). Her appearance is normal (Ex. 3F/18, 3F/33, 10F/9, 10F/22) and her hygiene is fair (Ex. 6F/30). The claimant testified that she has not experienced any changes in her ability to maintain attention and concentration (Ex. Hearing Testimony).

(R. 18).

In support of her argument that the ALJ failed to account for her non-severe mental impairments, Ms. Eliodor points to a psychiatric evaluation conducted by Ernesto Manuel Grenier, M.D on December 18, 2019. As set forth above, Dr. Grenier noted that after Ms. Eliodor was informed that her insurance would not continue to cover her rehabilitation, she reported increased suicidal ideations. (R. 644-45). However, the next day, Dr. Grenier conducted a tele-psychiatric evaluation of Ms. Eliodor and deemed her not to be a threat to herself and, therefore, cleared Ms. Eliodor for discharge. (R. 645). Dr. Grenier noted that Ms. Eliodor reported increased sadness, depressed mood, low motivation, and helplessness but that she denied suicidal or homicidal ideations. (R. 671).

Although Ms. Eliodor experienced a brief increase in mental symptoms after her stroke in December of 2019, the record reflects that she exhibited normal mental findings shortly thereafter. For example, on January 27, 2020, Dr. Mehta reported that Ms. Eliodor was alert and oriented with clear speech and good comprehension. (R. 1004). One day later, Ms. Dobrydnik reported that Ms. Eliodor self-reported no feelings of hopelessness or depression in the prior two weeks. (R. 1059). Ms. Eliodor further reported that depression symptoms had not caused her any difficulties with activities of daily life in the past two weeks. (R. 1059). On March 12, 2020, Dr. Crudu evaluated Ms. Eliodor with normal affect and good judgment and indicated that Ms. Eliodor reported no depression anxiety, panic attacks, thoughts of suicide, or hallucinations. (R. 941). On August 6, 2020, Dr. Crudu reported similar findings and noted that Ms. Eliodor continued to report no depression, anxiety, panic attacks, suicidal thoughts, or hallucinations. (R. 937). Thus, although Ms. Eliodor experienced a brief increase in mental symptoms after her stroke in December 2019, the evidence indicates that her mental symptoms subsided shortly thereafter. Therefore, the ALJ's RFC assessment is supported by, and consist with, substantial evidence in the record.

For the foregoing reasons, to the extent Ms. Eliodor's Motion for Summary Judgment is based on the claim that the ALJ's RFC assessment is not supported by substantial evidence, the undersigned recommends the Motion be denied.

## VIII. CONCLUSION AND RECOMMENDATION

In sum, Ms. Eliodor has undoubtedly suffered difficult physical challenges with understandable psychological implications, but for the reasons set forth above and based on the record before this Court, the undersigned finds that Ms. Eliodor has failed to demonstrate that the ALJ's Decision was not supported by substantial evidence.

Accordingly, the undersigned respectfully recommends that the Court **DENY** Plaintiff's Motion for Summary Judgment [ECF No. 17], **GRANT** Defendant's Motion for Summary Judgment [ECF No. 20], and **AFFIRM** the Decision of the Commissioner.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 11th day of February 2023.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
Hon. Beth Bloom, *U.S. District Judge*
Counsel of Record